UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 03-CV-1466 (JFB)

———————

JAMES BOYTION,

Petitioner,

VERSUS

W. PHILLIPS,
SUPERINTENDENT,
CLINTON CORRECTIONAL FACILITY,

Respondent.

———————

MEMORANDUM AND ORDER
April 12, 2006

———————

JOSEPH F. BIANCO, District Judge:

James Boyton petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction, following trial, of second-degree burglary and fifth-degree criminal possession of stolen property. Petitioner alleges the following: (1) that the State violated his constitutional rights to a jury trial and due process when it sentenced him as a discretionary persistent felony offender based on facts not submitted and found beyond a reasonable doubt by a jury; and (2) that the prosecutor's opening and closing statements were improper and deprived him of a fair trial. For the following reasons, the petition is denied.

I. BACKGROUND

A. The Underlying Facts

The following facts, adduced from the instant petition and underlying record, are not in dispute for purposes of this petition.

On November 4, 1999, at approximately 12:00 p.m., petitioner unlawfully entered the home of Queens County resident, Ms. Nanka-Bruce, and stole a gold bracelet and money, including three two-dollar bills. (Aff. in Opp. to Amend. Pet. for Writ of Habeas Corpus ¶ 3 (hereinafter "Resp. Aff.")). Nancy Cullum, a live-in, home health aide for the Nanka-Bruce family, saw petitioner exiting the front door of the home and confronted him. (*Id.*) The petitioner ran away and Cullum called 911

and gave a detailed description of petitioner to the operator. (*Id.*) Less than fifteen minutes later, the police apprehended petitioner, who matched Cullum's description, about seven blocks away from the house. (*Id.*) Cullum identified the petitioner and the police found the gold bracelet and money, including the three two-dollar bills, inside petitioner's pants. (*Id.*)

### B. Pre-Trial and Trial Procedures

Petitioner was charged in Queens Country with burglary in the second degree in violation of New York Penal Law § 140.25[2] and criminal possession of property in the fifth degree under New York Penal Law § 165.40. (Resp. Aff. ¶ 4.) Petitioner was tried before a jury and found guilty on both counts. (*Id.* at ¶ 5.)

### C. Sentencing

On June 1, 2000, the State court conducted a sentencing hearing to determine whether petitioner (a) qualified under New York Penal Law § 70.04 as a second violent felony offender, and (b) qualified under New York Penal Law § 70.10(1) as a persistent felony offender. (Resp. Aff. ¶ 6.)

At the hearing, the State contended that petitioner was a second violent felony offender because petitioner, using the name "Anthony Fleming," was convicted on June 17, 1986 of attempted burglary in the second degree pursuant to New York Penal Law §§ 110.00, 140.25[1][b]. (Resp. Aff. ¶ 7.) In addition, the defense submitted a report regarding petitioner's legal history that admitted "all but one conviction [was] of a non-violent nature." (Sent. Tr. at 4.) Petitioner, however, took the position that, despite the report, he had no prior violent felony offense. (*Id.*) Though he admitted his true name is Anthony Fleming, petitioner denied that he was the same person who was convicted under New York County Indictment number 4848/85 for the 1986 violent felony. (Sent. Tr. at 3, 5, 9.) In response, the State provided a certified report of a fingerprint comparison conducted by an Identification Specialist with the New York State Division of Criminal Justice. (*Id.* at 6.) The report certified that the fingerprint impressions of the individual arrested in 1985 for the case that resulted in indictment number 4848/95 matched the fingerprints of petitioner. (*Id.* at 6.) The State also suggested that petitioner had an "M.O." and that, according to the indictment from the 1986 conviction, the petitioner entered a building, went through a woman's pocketbook, and took her wallet and that the crime was identical to seven of the petitioner's ten prior convictions that he was not contesting. (*Id.* at 7.) Based on the fingerprint comparison conducted by the Identification Specialist, the petitioner's admission that his real name is Anthony Fleming, and the defense report "implicitly conced[ing] the issue," the court adjudicated petitioner as a second violent felony offender. (*Id.* at 14-15.)

Next, the State demonstrated that petitioner qualified as a persistent felony offender under New York Penal Law § 70.10(1)(a) based on two prior felony convictions to which petitioner conceded. (*Id.* at 5-6.)[1] A persistent felony offender is defined under New York Penal Law § 70.10(1)(a) as a "[p]erson who stands convicted of a felony after having previously been convicted of two or more felonies." Under the statute, such a person may receive an enhanced sentence if the sentencing court

---

[1]According to Defendants Pre-Sentence Report (Amend. Pet. Ex. F), petitioner admitted to five misdemeanors and five felony convictions.

2

"is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." *Id.* § 70.10(2).

At sentencing, the State requested that the court treat petitioner as a persistent felony offender, and give him a sentence of fifteen years to life. (Sent. Tr. at 22.) The Assistant District Attorney argued that the court should impose a sentence under the persistent felony offender:

> Mr. Boytion . . . stands . . . convicted of his eleventh crime. This is his fifth [f]elony conviction. He also has six [m]isdemeanor convictions. These crimes were all very similar . . . . I am asking the Court to consider the Defendant's extremely persistent record in which he receives jail sentence and immediately or quickly upon his release into society commits the same crime. I am asking [the court] to consider that as evidence that he is unlikely to be rehabilitated, and that at this point in time society deserves to be protected from a person who has no respect for the rights of the property of others. And I think . . . the fact that this crime was committed in a home rather than an office building . . . shows that far from learning from his previous mistakes, he has become more willing to place his interests above those of the people around him. His refusal to take responsibility for his behavior makes it unlikely that efforts to rehabilitate him would be successful.

(*Id.* at 18-21.)

Petitioner's counsel acknowledged petitioner's extensive criminal history. He argued, however, that the prior offenses were non-violent, larceny related offenses. (*Id.* at 23-25.) Petitioner's counsel argued that "on this particular case there was no weapon, there was no threat, there was not injury; and it was clear that if you agree with the jury's verdict that there was no intention on the part of [petitioner] to injure or hurt anyone." (*Id.* at 25.) Petitioner's attorney also asked the court to consider petitioner's children and siblings because "[a] sentence of fifteen years to life would destroy any hope that he has of seeing them again." (*Id.* at 27.)

The trial court sentenced petitioner as a persistent felony offender and gave him fifteen[2] years to life on the burglary count and one year in jail on the misdemeanor count, to run concurrently. (*Id.* at 33.)

### D. State Appeals and Post Judgment Motions

Petitioner appealed his conviction to the Appellate Division, Second Department. He raised the following claims: (1) remarks by the trial prosecutor during her opening statement and summation deprived him of a fair trial; and (2) the trial court abused its discretion by sentencing him as a persistent felony offender. On November 19, 2001, the Appellate Division affirmed the conviction, holding that the prosecutor's opening and closing remarks were proper, and that "the sentence imposed was not excessive." *People v. Boytion*, 288 A.D.2d 391 (2d Dept. 2001). On January 24, 2002, the New York Court of

---

[2] The sentencing transcript mistakenly states that the court was sentencing petitioner to "five years to life" on the burglary count. (Sent. Tr. at 33.) However, both parties state that petitioner was sentenced to fifteen years to life.

3

Appeals denied petitioner's application for leave to appeal further. *See People v. Boytion*, 97 N.Y.2d 702 (2001).

On April 11, 2003, petitioner moved pursuant to C.P.L § 440.20 for an order vacating his sentence as a persistent felony offender, and resentencing him as a second violent felony offender. (*See* Not. of Mot. Pursuant to C.P.L. § 440.20.) In his moving papers, petitioner argued that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002). On June 2, 2003, Justice Blumenfeld issued an order denying petitioner's motion to set aside his sentence, holding that the New York Court of Appeals decision in *People v. Rosen*, 96 N.Y.2d 329 (2001), which held that the discretionary persistent felony statute does not violate *Apprendi*, was binding, and thus petitioner's sentence was lawful. The court further held that, under *Coleman v. United States,* 329 F.3d 77 (2d Cir. 2003), the *Apprendi* rule could not be applied retroactively in this case.

On June 23, 2003, petitioner filed a leave application before the Appellate Division, Second Department. On September 3, 2003, the Appellate Division, Second Department issued an order denying petitioner's application for leave to appeal.

D. The Instant Action

On March 24, 2003, petitioner filed a *pro se* petition (hereinafter "Orig. Pet.") with this Court for writ of *habeas corpus*, raising the same prosecutorial misconduct claims he set forth in his direct appeal to the Appellate Division, Second Department.

On July 1, 2003, petitioner notified this court in a *pro se* letter, that he filed a leave application with the Appellate Division, Second Department, and requested this Court hold his March, 2003 *pro se* petition for writ of *habeas corpus* in abeyance until the outcome of his leave application was known. Petitioner also requested permission to amend his petition to include the *Apprendi* claim which was the subject of his leave application. Petitioner's request was granted on July 10, 2003. As noted above, the application for leave to appeal was denied by the Appellate Division, Second Department on September 3, 2003.

In a *pro se* letter, dated October 11, 2003, petitioner requested an extension of time to amend his petition. On October 30, 2003, the request was granted and petitioner was ordered to file an amended petition by December 12, 2003.

On May 5, 2004, counsel for petitioner submitted a letter requesting permission to amend petitioner's *pro se* petition to include the *Apprendi* claim. The request to amend the original petition was granted on May 19, 2004. On June 15, 2004, counsel for petitioner filed the instant amended petition, incorporating by reference petitioner's *pro se* petition claim that the prosecutor's opening and closing statements deprived him of a fair trial, and arguing that petitioner's sentence as a persistent felony offer was unconstitutional and violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On February 8, 2005, the Respondent filed his opposition papers. No reply was filed. On February 1, 2006 this case was reassigned to this Court.

II. DISCUSSION

A. The Standard of Review

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of

review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review– "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit also has noted that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### B. The *Apprendi* Claim in Boytion's Amended Petition is Time Barred

#### 1. Statute of Limitations

AEDPA imposes a one-year statute of limitations on state prisoners seeking *habeas corpus* review in federal court. 28 U.S.C. § 2244(d)(1). The statute begins to run from the latest of: (1) "the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review"; (2) "the date on which the impediment to filing an application created by State action in violation of the Constitution of the laws of the United States is removed, if the applicant was prevented from filing by such State action"; (3) "the date

5

on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on direct review;" (4) "the date on which a factual predicate to support a claim could have been discovered through due diligence." 28 U.S.C. § 2244(d)(1)(A-D).

Respondent argues that the amended petition should be dismissed as untimely because it was filed almost nine months after the expiration of the statute of limitations and petitioner's *Apprendi* claim does not relate back to the original petition. (Res. Memo at 23.) Pursuant to 28 U.S.C. § 2244(d)(1)(A-D), the statute of limitations began to run on the date petitioner's conviction became final. Petitioner's application for leave to appeal was denied by the New York Court of Appeals on January 24, 2002. Pursuant to Supreme Court Rule 13(1), the time for petitioner to seek review in the United States Supreme Court expired ninety days later. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (a "petitioner's 'conviction becomes final for [AEDPA] purposes when his time to seek direct review in the United States Supreme Court by writ of certiorari expires'") (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Petitioner's conviction therefore became final, and the one-year limitations period began to run, on April 24, 2002. Respondents agree, however, that this period was tolled when, on April 11, 2003, petitioner filed a motion to set aside his sentence in state court. (Resp. Memo at 24-25.) That motion remained pending until September 3, 2003, when his leave to appeal from the denial of his motion to set aside his sentence was denied. Thus, the statute of limitations that was due to expire on April 24, 2002 was tolled between April 11, 2003 and September 3, 2003.[3] Before the tolling period began, petitioner had thirteen days remaining to file a petition for writ of *habeas corpus*. Therefore, the statute of limitations period expired on September 16, 2003.[4]

Petitioner timely filed a *pro se* petition on March 24, 2003. The amended petition, filed on June 15, 2004, however, was filed nine months after the limitations period expired.[5]

---

[3] *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

[4] The fact that petitioner was granted several extensions of time for leave to amend does not further toll the limitations period. *See Pruitt v. United States*, 274 F.3d 1315, 1319 (11th Cir. 2001) (the relation back doctrine must apply for an untimely amendment to avoid being time-barred even if "the district court allows the amendment.") To hold otherwise would undermine the limitations period set forth by Congress in the AEDPA and the requirements of Federal Rule of Civil Procedure 15(c).

[5] In "rare and exceptional" circumstances, the one-year statute of limitations is subject to equitable tolling. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied,* 531 U.S. 820 (2000); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). In order to obtain the benefit of equitable tolling, a petitioner must make two showings: (1) he must demonstrate that "extraordinary circumstances prevented him from filing his petition on time"; and (2) he must have "acted with reasonable diligence throughout the period he seeks to toll." *Smith*, 208 F.3d at 17. The petitioner bears the burden to affirmatively show that he is entitled to equitable tolling. *See Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 37 (2d Cir. 2002). Here, petitioner has not attempted to assert he is entitled to equitable tolling and has set forth no facts demonstrating

## 2. Relation Back Doctrine

"[A] petition for habeas corpus 'may be amended or supplemented as provided in the rules of procedure applicable to civil actions.' And Rule 11 of the Rules Governing 2254 Cases provides that 'the Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules.'" *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2d Cir. 2000) (quoting 28 U.S.C. § 2242).

The relevant portion of Fed. R. Civ. P. 15 provides: "An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Thus, to avoid being time barred, the amended petition, wich was filed after the limitations period had run, must "relate back" to the original *pro se* petition.

Counsel for petitioner did not contest respondent's argument that the petition did not relate back. The validity of the timeliness was not addressed in the amended petition and counsel for petitioner chose not to file a reply.

The fact that petitioner filed a timely petition regarding the same conviction is not enough to trigger "relation back." *See Mayle v. Felix*, 125 S. Ct. 2562, 2573-74 (2005) ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."). The Supreme Court held in *Mayle* that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 125 S. Ct. at 2566. In *Mayle*, petitioner filed a timely petition alleging that his confrontation rights were violated by the admission of videotaped testimony of a witness. *Id.* After the expiration of the AEDPA's limitation period, petitioner filed an amended petition in which he added a new claim, alleging a violation of his Fifth Amendment right of self-incrimination due to police use of coercive tactics to obtain damaging statements. *Id.* The Court held that the Fifth Amendment claim in the amended petition did not relate back to the original petition because the claims in the original and amended petitions were not "tied to a common core of operative facts." *Id.* at 2574.

Here, petitioner's amended petition does not satisfy the standard set forth in *Mayle* and thus the *Apprendi* claim does not relate back to the original petition. The only claims alleged in petitioner's original petition are: (a) "the prosecution violated defendant's constitutional right by shifting the 'burden of proof' in her opening statements to the jury" and (b) "prosecutor's [sic] should not engage in giving their own opinion expressing his or her own personal beliefs of guilt or innocence." (Orig. Pet. at 5.) The amended petitioner alleges a violation of petitioner's due process and sixth amendment rights under *Apprendi*. The facts relating to the alleged prosecutorial violation occurred at trial during opening and closing remarks. The alleged *Apprendi* claim, however, occurred during a separate sentencing hearing. The two claims arise out of facts that differ in time and type and the amended petition asserts a completely new ground for relief. Relation back,

---

extraordinary circumstances that prevented him from filing a timely amended petition. Equitable tolling is, therefore, not available to petitioner.

therefore, does not apply and petitioner's *Apprendi* claim is time-barred.[6]

C. The Prosecutor's Opening and Closing Remarks

The petition also alleges that the prosecutor's opening and closing statements were improper and denied him his right to a fair trial. (Pet. at 5; Amend. Pet. at 29.)[7] For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutor' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation and citation omitted). "There must, instead, be a showing that '[petitioner] suffered actual prejudice because the prosecutor's comments during [opening and/or] summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Alexander v. Phillips*, 2006 U.S. Dist. LEXIS 8926, *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz*, 152 Fed. Appx. 45, 46-47 (2d Cir. 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden*, 477 U.S. at 181) (citations omitted)); *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). "To determine prejudice, the following factors must be considered: '(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct.'" *Alexander*, 1006 U.S. Dist. LEXIS at *41 (quoting *Bentley*, 41 F.3d at 824) (citation omitted)).

Here, petitioner argues that, in the prosecutor's opening argument and in her summation, she vouched for Cullum's credibility. Petitioner specifically complains that the prosecutor stated:

> [Y]ou will hear that the Nanka-Bruce family had tried several caregivers from [an] agency, and after trying several, they tried Nancy Cullum, and if you ever cared for an elderly relative, you know what it means, that when they worked with Nancy Cullum, they decided her work was so good, they wanted to hire her on a permanent basis.

(Trial Transcript (hereinafter "TT") at 418.) Petitioner also complains of statements of "vouching" such as the prosecutor describing Cullum as a "close and trusted member of the

---

[6] Even assuming *arguendo* petitioner's claim was not time-barred, petitioner's argument, that enhanced sentences pursuant to the persistent felony offender statute violate *Apprendi*, has been explicitly rejected by the Second Circuit. *See Brown v. Greiner*, 409 F.3d 523, 534 (2d Cir. 2005) ("the state courts did not unreasonably apply *Apprendi* and the cases that proceeded it") *cert denied*, 2006 WL 685159 (Mar. 20, 2006); *see also Witherspoon v. Woods*, No. 04-CV-5528 (JFB), 2006 WL 721510, at *4-7 (E.D.N.Y. March 6, 2006) (citing cases and holding that application of New York's persistent felony offender statute does not violate or involve an unreasonable application of *Apprendi* or *Ring*). Therefore, not only is the *Apprendi* claim time-barred, but it also fails on the merits for the reasons set forth in *Brown* and *Witherspoon*.

[7] This claim, pled in the original *pro se* petiton, was incorporated by reference in the amended petition. Unlike the *Apprendi* claim, this claim is timely because it relates back.

8

[victim's] household" (TT at 418), that Cullum got "a good look" at the burglar and "unequivocally recognized him" (TT at 423, 428) and that Cullum spoke to the intruder "with the certainty in her voice, [that] came from knowing who was entitled to be in the house and who was not entitled to be in the house." (TT at 422).

The petitioner also complains that the prosecutors opening included hearsay: "You will hear [Cullum] told Detective Bordonaro that [petitioner] was the man who had been in Susan Nanka-Bruce's house." (TT at 429.)

As to the summation, petitioner also complains that the prosecutor referred to her case as "strong," stating there was no "other view of the evidence," that she continuously used phrases such as "I ask you," "I would submit to you," "I urge you," or "I believe" (TT at 826-841, 843, 847-848, 850, 853-861, 863-864, 866, 868-870), and again vouched for Cullum's credibility, referring to her descriptions of the burglar as "superb." (TT at 829-830, 831, 866). Petitioner also takes issue with the prosecutor's lengthy presentation in summation that Cullum had no motive to commit the crime and that Cullum has an "excellent relationship" with her employer. (TT at 829-830, 831, 848-858, 866).

Finally, petitioner complains that the prosecutor vouched for Richard Nanka-Bruce's credibility.

Despite petitioner's contention, the prosecutor's opening and closing remarks were not improper. During opening, the prosecutor merely provided a preview of her case and the evidence that was to be set forth at trial. As to the summation, the prosecutor was responding to petitioner's arguments during his own summation, including an allegation that Cullum was involved in the crime. Furthermore, the court gave extensive instructions to the jury such that any potential prejudice was mitigated. (TT at 408-09, 411-412, 876.)

The Court finds that the prosecutor's opening statement and summation did not constitute a denial of due process. Evening assuming *arguendo* that the statements in the opening and summation were improper, it cannot be said that the statements "infected the trial" in such a manner as to deny due process and cause the resulting conviction. The evidence of guilt established by the prosecution in the case was overwhelming. Cullum, the eyewitness, testified that she saw petitioner exit the house from a distance of approximately seven feet. (TT at 461, 463-64.) She called 911 within a few minutes of confronting the petitioner and described him as wearing a burgundy jacket with gold or beige lettering, tan pants, with a scar on his face. (TT at 462, 467.) Petitioner was apprehended less than fifteen minutes later, seven blocks away, wearing the burgundy jacket and tan pants. (TT at 660-61, 665.) The arresting detective also confirmed that he had a scar on his cheek. (TT at 662.) Missing from the victim's home were a gold bracelet and money, including three two dollar bills. (TT at 560-62, 616-618.) At the police station, officers recovered from petitioner's pockets ninety six dollars, including three, two-dollar bills and the gold bracelet. (TT at 672-673, 703.) Given the compelling evidence in the prosecution's case against petitioner, the Court finds that petitioner has failed to demonstrate "actual prejudice." *See Bentley*, 41 F.3d at 825 (finding harmless error and a failure to demonstrate a substantial or injurious effect where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"); *see also Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt

demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks.").

Accordingly, there is no basis to conclude that the State court decision denying petitioner's constitutional claim, relating to the prosecutor's opening statement and summation, violated the standard set forth in Section 2254.

V. CONCLUSION

Petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is DENIED. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 12, 2006
Brooklyn, NY

\* \* \*

The attorneys for the petitioner are Lynn W.L. Fahey, Esq., and Barbara Lerner, Esq. of the Appellate Advocates, 2 Rector Street, 10th Floor, New York, New York 10006. The attorneys for the respondent are John M. Castellano, Esq., and William C. Milaccio, Esq., Assistant District Attorneys, Richard Brown, Esq., District Attorney Queens County, 125091 Queens Boulevard, Kew Gardens, New York, 11415.